Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| MUNICIPIO DE ISABELA<br><br>Apelado<br><br>v.<br><br>TEMPERATURE DEVELOPERS INVESTMENT CORP., JEFFLEE E. ABREU ALERS, FULANA DE TAL Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS, JEFFREY ABREU PROSPER, LISETTE ALERS MÉNDEZ Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR EL MATRIMONIO ABREU ALERS<br><br>Apelantes | KLAN202300794 | *APELACION* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso número: AG2020CV00177<br><br>Sobre: Cobro de Dinero |
|---|---|---|

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 15 de julio de 2024.

Comparece la parte apelante, Lisette Alers, mediante el presente recurso de apelación, y nos solicita que revoquemos la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, el 4 de agosto de 2023, notificada el 8 del mismo mes y año. Mediante dicho dictamen, el foro primario declaró Ha Lugar la demanda presentada por el Municipio de Isabela, el 12 de febrero de 2020. En consecuencia, ordenó a la parte apelante a satisfacer a favor del Municipio de Isabela la suma de $71,010.12 por concepto de patente municipal, $5,600.25 por concepto de patente municipal por arrendamiento de locales comerciales, y $187,581.52 por falta de pago de IVU municipal retenido, así como los intereses, recargos y penalidades que se siguieran acumulando

Número Identificador

SEN2024 _____

hasta el correspondiente pago, y $10,000.00 por concepto de honorarios de abogado.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

**I**

El 12 de febrero de 2020, el Municipio de Isabela (Municipio o parte apelada) presentó una *Demanda* de cobro de dinero en contra de Temperature Developers Investment Corp., Jefflee E. Abreu Alers, Fulana de Tal y la Sociedad Legal de Gananciales compuesta por ambos, Jeffrey Abreu Prosper, Lisette Alers Méndez (parte apelante) y la Sociedad Legal de Gananciales compuesta por el matrimonio Abreu Alers.[1] En la misma, alegaron que la parte apelada había incumplido con su obligación de radicar su planilla mensual sobre IVU municipal para los periodos comprendidos de enero de 2011 hasta enero de 2020, por lo que adeudan $187,581.52 por falta de pago de IVU municipal retenido. Esta cantidad incluía intereses equivalentes a $38,355.01, recargos equivalentes a $6,042.33, una penalidad equivalente a $13,658.02, multa por no remitir pagos equivalentes a $54,002.83, una multa por no radicar las planillas mensuales equivalente a $15,100.00. Reclamaron, además el cobro de $107,470.65 por concepto de patente municipal por la operación de negocio de ventas de aires acondicionados, y $5,600.25 por concepto de patente municipal por arrendamiento de locales comerciales. Argumentó haber realizado múltiples gestiones de cobro que resultaron infructuosas y, por consiguiente, declaró la deuda vencida, líquida y exigible.

En respuesta, el 21 de agosto de 2020, la parte apelante presentó una *Moción Contestación a Demanda y Oposición a Embargo Preventivo.*[2] Entre sus defensas afirmativas, sostuvo la

---

[1] Apéndice II del recurso, págs. 15-33.
[2] Apéndice III del recuso, págs. 34-36.

falta de jurisdicción por incumplimiento con el procedimiento establecido en la Ley de Patentes Municipales, Ley Núm. 113 del 10 de julio de 1974, 21 LPRA sec. 621 *et seq.* Particularmente, argumentó que previo a tasar una deficiencia contributiva y proceder a iniciar un procedimiento de cobro por la vía de apremio o mediante el procedimiento judicial, el municipio debía remitirle al contribuyente una notificación de deficiencia.

Luego de varios trámites procesales, el 3 de febrero de 2021, la parte apelante presentó una *Moción de sentencia sumaria, solicitud de desestimación por falta de parte indispensable, deficiencia en los emplazamiento, y prescripción.*[3] En oposición, el 23 de febrero de 2021, la parte apelada presentó una *Moción en Oposición a sentencia sumaria, solicitud desestimación por falta de parte indispensable, deficiencia en los emplazamientos y prescripción.*[4] En lo pertinente, el Municipio alegó que la parte demandada había sido notificada de este caso, que tuvieron oportunidad de defenderse y que, conforme a la Regla 4.7 de Procedimiento Civil, 32 LPRA Ap. V, resultaba innecesaria la presentación de prueba de diligenciamiento. Por otro lado, alegó que los términos prescriptivos fueron interrumpidos y que el cobro de la deuda por concepto de patente municipal no requería tasación. Sobre este particular, argumentó que la Ley Núm. 113-1974, supra, requería que el contribuyente hubiera rendido la declaración de volumen para que el monto de las patentes fuese tasado. Ahora bien, aclaró que la tasación de la patente era distinta al cómputo de la patente, puesto que la referida ley requería la tasación para convertir una deficiencia en una deuda líquida, vencida y exigible. Argumentó que, si el contribuyente no había radicado la declaración

---

[3] Véase, Entrada Núm. 45 del Caso Núm. AG2020CV00177 en el Sistema Unificado de Manejo de Administración de Casos (SUMAC).
[4] Véase, Entrada Núm. 50 del Caso Núm. AG2020CV00177 en el SUMAC.

de volumen y el Municipio preparaba una planilla de oficio, el monto determinado no era una deficiencia. Tampoco era una deficiencia si el contribuyente radicaba la declaración de volumen y el volumen del monto de patente era correcto, pero no era pagado. El 16 de marzo de 2021, el foro primario emitió una *Sentencia Parcial.* En la misma, declaró No Ha Lugar la moción de sentencia sumaria presentada por la parte apelante al entender que existían una serie de hechos en controversia que impedían resolver el pleito por la vía sumaria.[5]

El 17 de julio de 2023 se celebró el juicio en su fondo y el 4 de agosto de 2023, el tribunal emitió la *Sentencia* apelada en el presente recurso.[6] En la misma se le ordenó a la parte apelante a satisfacer a favor del Municipio de Isabela la suma de $71,010.12 por concepto de patente municipal, $5,600.25 por concepto de patente municipal por arrendamiento de locales comerciales y $187,581.52 por falta de pago de IVU municipal retenido, así como los intereses, recargos y penalidades que se sigan acumulando hasta el correspondiente pago. De igual forma, le impuso a la parte apelante el pago de $10,000.00 a favor del Municipio de Isabela por concepto de honorarios de abogado. La referida cantidad devengaría intereses a razón de un 9.25% desde la fecha en que surgió la causa de acción y hasta la fecha en que se dictara sentencia a computarse sobre la cuantía de la sentencia.

Inconforme, el 7 de septiembre de 2023, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló el siguiente error:

> Erró el Tribunal de Primera Instancia al ordenar el pago de **$187,581.52** por falta de pago de IVU municipal retenido, así como los intereses, recargos y penalidades, a **Temperature Developers Investment Group, Corp.,** aun cuando de los documentos presentados y admitido[s] en evidencia indicaban la dirección utilizada

---

[5] Véase, Entrada Núm. 51 del Caso Núm. AG2020CV00177 en el SUMAC.
[6] Apéndice I del recurso, págs. 1-14.

para notificar el cobro de IVU Municipal a Temperature Developers Investment Group, Corp., y por lo tanto la dirección **7459 Ave. Agustín Ramos Calero Isabela, PR 00662** no era la dirección cor[r]ecta que aparecía en el expediente de rentas internas del Municipio de Isabela, y que esta falta de notificación adecuada por parte del Municipio de Isabela provocó que la corporación no se diera por enterada del cobro de la patente e IVU [m]unicipal.

En cumplimiento con nuestras *Resoluciones* del 11 de septiembre de 2023 y del 2 de noviembre del mismo año, la parte apelada compareció mediante *Oposición a Apelación* el 6 de octubre de 2023, y mediante *Moción Presentando Argumento en Oposición al Planteamiento de la Parte Apelante de que no Hubo Notificación Adecuada* el 15 de noviembre del mismo año.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A

En una acción de cobro de dinero, la parte demandante únicamente puede reclamar, por vía judicial, aquellas deudas que sean vencidas, líquidas y exigibles. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108 (2021). Respecto a ello, el Tribunal Supremo de Puerto Rico expresó que:

> El vocablo "líquida" en relación con una cuenta, en lenguaje corriente significa el saldo "o residuo de cuantía cierta que resulta de la comparación del cargo con la data". Y la voz "exigible" refiriéndose a una obligación, significa que puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

En ese sentido, la deuda es "líquida" cuando la cuantía de dinero debida es "cierta" y "determinada". *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001), citando a M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168 y a *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965). Por otro lado, la deuda es "exigible" cuando la obligación no está sujeta a una causa de nulidad y puede demandarse su

cumplimiento. *Guadalupe v. Rodríguez*, supra. Sobre ese particular, nuestro Tribunal Supremo determinó en *RMCA v. Mayol Bianchi*, supra, págs. 108-109, lo siguiente:

> La deuda es líquida por ser cierta y determinada, y es exigible porque puede demandarse su cumplimiento. Así que, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha *sido aceptado como correcto por el deudor y que está vencido*". (Citas omitidas).

Por otro lado, la parte que exige el cumplimiento de una obligación es a quien le corresponde probar su existencia. *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711, 719 (2000); *H.R. Stationery, Inc. v. E.L.A.*, 119 DPR 129, 134 (1987). Lo anterior es cónsono con la Regla 110 de Evidencia de Puerto Rico de 2009, 32 LPRA Ap. VI, R. 110, pues el peso de la prueba recae sobre la parte que resultaría vencida en caso de no presentarse prueba alguna.

**B**

Los municipios del Estado Libre Asociado de Puerto Rico están autorizados a imponer y cobrar patentes, según los tipos definidos por ley, a toda persona dedicada a la prestación de cualquier servicio, o a la venta de cualquier bien, negocio o cualquier industria o negocio, según establecía la Ley Núm. 113 del 10 de julio de 1974, según enmendada, 21 LPRA sec. 621 *et seq.*, conocida como la Ley de Patentes Municipales.[7] El propósito de esta ley es facultar a cada municipio a imponer el impuesto de patentes sobre la operación específica que una industria o negocio lleva a cabo dentro de su jurisdicción. *Coca Cola v. Municipio de Aguadilla*, 99 DPR 839 (1971).

La Sección 10 de la referida ley, le imponía a toda persona sujeta al pago de patente o a su agente autorizado la obligación de

---

[7] El derecho aplicable en el caso de autos se remite a la Ley 113-1974, según enmendada, 21 LPRA sec. 621 *et seq.* (derogada), toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación del Código Municipal de Puerto Rico, Ley Núm. 107-2020, 21 LPRA sec. 7001.

rendir una declaración de volumen de negocio, en o antes de cinco (5) días laborables siguientes al 15 de abril de cada año contributivo. Las declaraciones debían ser rendidas al Director de Finanzas en donde estuviese localizada la casa u oficina principal y una copia de dicha declaración debía ser rendida al Director de Finanzas de cada municipio en donde la persona hubiese recibido o devengado ingresos sujetos a la patente impuesta. En lo pertinente, la Sección 10 establecía:

> (a) Fecha para la declaración. — (1) Regla general.— En o antes de la fecha de vigencia de esta ley, toda persona sujeta al pago de patente o su agente autorizado estará obligada a rendir una declaración de volumen de negocio, según se dispone en esta ley, en o antes de los cinco (5) días laborables siguientes al 15 de abril de cada año contributivo.
>
> [...]
>
> (b) A quién rendir las declaraciones.— Las declaraciones deberán ser rendidas al Director de Finanzas en donde está localizada la casa u oficina principal y una copia de dicha declaración deberá ser rendida al Director de Finanzas de cada municipio en donde la persona haya recibido o devengado ingresos sujeto a la patente impuesta por autorización de esta ley. 21 LPRA sec. 651h.

La patente debía ser pagada a los recaudadores oficiales de los municipios en que radiquen los negocios, dentro de los primeros (15) días de cada semestre del año económico, tomando como base el volumen de los negocios efectuados durante el año inmediatamente anterior. La Sección 11, establece que:

> Toda persona sujeta al pago de patente que impone esta ley pagará a los recaudadores oficiales de los municipios en que radiquen sus negocios o industrias la patente que autoriza imponer dichas secciones. Dicha patente se pagará por anticipado dentro de los primeros quince (15) días de cada semestre del año económico, tomando como base el volumen de negocios efectuado durante el año inmediatamente anterior, según se dispone en la Sección 7 de esta ley, excepto en casos de nuevas industrias o negocios que se pagará, según lo dispuesto en esta ley en su Sección 13. Cuando el pago total se efectúe al momento de radicar la planilla, según se dispone en la Sección 10 (a)(1) de esta ley, se concederá un descuento de cinco por ciento (5%) sobre el monto total de la patente a pagar. No se cobrará patente alguna a negocio o industria en los semestres

subsiguientes a aquél en que cesare de operar. Las patentes vencerán en plazos semestrales el 1ro de julio y el 2 de enero de cada año. 21 LPRA sec. 651j.

Con respecto a la definición de deficiencia establecida en la ley, la Sección 15 establece:

(a) Deficiencia.— Según se emplea en esta ley con respecto a la patente impuesta por las mismas, "deficiencia" significa el monto por el cual la patente que se autoriza a imponer y cobrar excede:
(1) La suma de:
    (A) La cantidad declarada como patente por la persona en su declaración, si dicha persona rindió una declaración y declaró en la misma alguna cantidad como patente, más
    (B) las cantidades previamente tasadas, o cobradas sin tasación, como deficiencia, menos
(2) el monto de las reducciones hechas, según se define en el apartado (b) de esta sección. 21 LPRA sec. 651n.

[…]

Por otro lado, la referida le disponía en la Sección 16 el siguiente procedimiento en cuanto a la tasación y cobro de deficiencia:

(a) Notificación de deficiencia y recursos de la persona. — Salvo lo que de otro modo se disponga en esta ley: (1) Si en el caso de cualquier persona el Director de Finanzas determinare que hay una deficiencia con respecto a la patente impuesta por autorización de esta ley, el Director de Finanzas notificará a la persona dicha deficiencia por correo certificado, y la persona podrá, dentro de los treinta (30) días siguientes a la fecha del depósito en el correo de dicha notificación o dentro de la prórroga que a tal fin le concede el Director de Finanzas, solicitar de éste, por escrito, la reconsideración de dicha deficiencia o pedir una vista administrativa en relación con la misma. Si la persona no solicitare reconsideración en la forma y dentro del término aquí dispuesto, o si habiéndola solicitado, se confirmare en todo o en parte la deficiencia notificada, el Director de Finanzas notificará por correo certificado, en ambos casos, su determinación final a la persona con expresión del monto de la fianza que deberá prestar la persona si deseare recurrir ante el Tribunal de Primera Instancia contra dicha determinación de deficiencia. Tal fianza no deberá exceder del monto de la patente, más intereses sobre la deficiencia computados por el período de un año adicional al nueve por ciento (9%) anual. 21 LPRA sec. 651o.

El proceso de tasación tenía un término prescriptivo de cuatro (4) años, contados a partir de la fecha en que se rindió la declaración. 21 LPRA sec. 651r. No obstante, como excepción al

periodo de prescripción, en el caso de que se dejare de rendir declaración la patente podía ser tasada, o un procedimiento en el tribunal sin tasación para el cobro de dicha patente podría comenzarse, en cualquier momento. 21 LPRA sec. 651s.

Por otro lado, nuestro Tribuna Supremo en *Lukoil Pan Americas v. Mun. Guayanilla,* 192 DPR 879, 887-888 (2015), reiteró la normativa jurisprudencial en torno a cómo se interpretan los estatutos contributivos, al señalar que:

> A pesar de que se favorece una interpretación liberal de los poderes tributarios otorgados a los municipios, debemos tener presente que como cuestión de hermenéutica también hemos reiterado que los estatutos contributivos deben ser interpretados razonablemente, teniendo en mente el propósito y la intención del legislador. Ortiz Chévere et al. v. Srio. Hacienda, 186 DPR 951, 975 (2012); Lilly del Caribe v. CRIM, 185 DPR 239, 251 (2012); Licorería Trigo, Inc. v. Srio. de Hacienda, 94 DPR 270, 279 (1967).
>
> Asimismo, los estatutos contributivos "no se habrán de interpretar de forma extensiva, sino que se deberán interpretar de una forma justa y conforme a sus propios y expresos términos". *Ortiz Chévere et al. v. Srio. Hacienda,* supra, págs. 975–976, citando a *Yiyi Motors, Inc. v. E.L.A.,* 177 DPR 230, 250 (2009). **No obstante, "no podemos interpretar una ley contributiva de manera que facilite la evasión de los tributos que la Asamblea Legislativa ha establecido".** *Ortiz Chévere et al. v. Srio. Hacienda,* supra, pág. 976. Véanse, además: *Lilly del Caribe v. CRIM,* supra, pág. 252; *West India Oil Co (P.R.) v. Sancho Bonet,* Tes., 54 DPR 732, 744–745 (1939). Aun así, cuando del estatuto no surge con claridad que su propósito es imponer una contribución, estamos obligados a resolver a favor de su no imposición. *Pfizer Pharm. v. Mun. de Vega Baja,* supra, págs. 278–279; *Yiyi Motors, Inc. v. E.L.A.,* supra, págs. 250–251; *B.B.C. Realty v. Secretario Hacienda,* 166 DPR 498, 511 (2005); *Central Coloso v. Descartes, Tes.,* 74 DPR 481, 486. (Énfasis Nuestro).

### C

El Código de Rentas Internas de Puerto Rico de 1994[8], Ley Núm. 130 de 1994, según enmendada, 13 LPRA sec. 80006, establecía la obligación de los municipios de imponer un impuesto

---

[8] La Ley Núm. 1 de 31 de enero de 2011 (´Ley 1-2011") derogó el Código de Rentas Internas del 1994, y estableció el Código de Rentas Internas para un Nuevo Puerto Rico.

sobre ventas y uso de uno punto cinco por ciento (1.5%) y a cobrar uno por ciento (1%) de esa imposición. De igual forma, el referido código se le impuso a todo comerciante la obligación de presentar una Planilla Mensual de Impuestos sobre Ventas y Uso y a remitir el impuesto sobre ventas no más tarde del día décimo (10mo) del mes siguiente al que se recaudaran dichos impuestos. Posteriormente, el Código de Rentas Internas del Puerto Rico de 2011, Ley Núm. 1 de 2011, según enmendada, 13 LPRA sec. 3001, mantuvo disposiciones similares a las del código de 1994 en sus secciones 4041.02(c) y 6080.14(a). La Sección 4041.02(c) establece:

> (a) Declaración de Importación. — Toda persona que importe a Puerto Rico propiedad mueble tangible someterá una declaración detallada de impuesto sobre uso con relación a toda la propiedad mueble tangible introducida del exterior, en el tiempo, la forma, la manera y con aquella información que el Secretario establezca, como requisito previo para poder efectuar el levante de la propiedad mueble tangible importada, o para informar y pagar el impuesto sobre uso según lo dispuesto en la Sección 4042.03(a)(1)(B)(i)(III). Disponiéndose que en esta declaración se deberá incluir la porción del impuesto sobre uso municipal que cobrará el Secretario conforme a la Sección 6080.14 de este Código, con relación a toda la propiedad mueble tangible introducida del exterior, por lo que no se tendrá que presentar una declaración adicional para propósitos del Impuesto sobre Ventas y Uso Municipal. Disponiéndose, además, que el Secretario permitirá que las personas reclamen en la Declaración de Importación el impuesto sobre ventas cobrado por el vendedor. 13 LPRA sec. 32092.

Por su parte, la Sección 6080.14(a) establece:

> (a) Autorización y obligatoriedad. — A partir del 1ro. de febrero de 2014, todos los municipios impondrán uniforme y obligatoriamente un impuesto sobre ventas y uso sobre la venta y uso de una partida tributable de conformidad con la autorización establecida en la Sección 4020.10. Dicha contribución será por una tasa contributiva fija de uno (1) por ciento la cual será cobrada por los municipios. La tasa contributiva de uno (1) por ciento, será impuesta sobre la venta y el uso de una partida tributable de conformidad con la misma base, exenciones y limitaciones contenidas en el Subtítulo D del Código, salvo en las excepciones dispuestas en esta Sección. Disponiéndose que la tasa contributiva fija de uno (1) por ciento que será cobrada por los municipios, según dispuesto en este apartado,

no será aplicable a los servicios rendidos a otros comerciantes ni a los servicios profesionales designados. Dichos servicios estarán sujetos a partir del 1ro. de octubre de 2015 únicamente a la tasa del cuatro (4) por ciento dispuesta en las Secciones 4210.01(c) y 4210.02(c) de este Código. 13 LPRA sec. 33344.

En cuanto a la tasación y cobro de deficiencias, la Sección 6010.01 (b) del Código de Rentas Internas define deficiencia de la siguiente forma:

> Deficiencia. — Según se utiliza en este Código con respecto a la contribución impuesta por cualquier Subtítulo del Código, el término "deficiencia" significa el monto por el cual la contribución impuesta por cualquier Subtítulo de este Código sobrepase el exceso de — (1) la suma de (A) la cantidad declarada como contribución por el contribuyente en su planilla o en su declaración de impuestos si se rindió una planilla o declaración de impuestos por el contribuyente y se declaró en la misma por el contribuyente alguna cantidad como contribución o impuesto, más (B) las cantidades previamente tasadas, o cobradas sin tasación, como deficiencia, sobre — (2) el monto de las reducciones hechas, según éstas se definen en el apartado (c)(2). 13 LPRA sec. 33001.

Por otro lado, debemos mencionar que tanto el Código de Rentas Internas de 1994 en su la Sección 6006(a), como el Código de Rentas Internas de 2011, supra, en su Sección 6010.06(a) proveen una disposición casi idéntica a la establecida en la Ley de Patentes Municipales, supra, en cuanto a las excepciones al periodo de prescripción. Establece lo siguiente:

> (a) Planilla o Declaración Falsa o Ausencia de Planilla o Declaración. — En el caso de una planilla o declaración requerida bajo cualquier Subtítulo de este Código que fuese rendida de una manera falsa o fraudulenta con la intención de evadir contribución o en el caso de que se dejare de rendir planilla o declaración, **la contribución podrá ser tasada, o un procedimiento en corte sin tasación para el cobro de dicha contribución podrá comenzarse, en cualquier momento.** (Énfasis Nuestro).

### D

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Como

regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *BPPR v. SLG Gómez-López*, 2023 TSPR 145, 213 DPR ___ (2023); *Dávila Nieves v. Meléndez Marín*, supra, pág. 771; *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

Sin embargo, la norma de deferencia esbozada encuentra su excepción y cede cuando la parte promovente demuestra que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad. *BPPR v. SLG Gómez-López*, supra; *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689 (2012). Además, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Por *discreción* se entiende el "tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción". *García v. Asociación*, 165 DPR 311, 321 (2005), citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). No obstante, "el adecuado ejercicio de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad". *Íd.* A esos efectos, el Tribunal Supremo de Puerto Rico ha indicado cuáles son situaciones que constituyen un abuso de discreción, a saber:

> [C]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no

obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. *Ramírez v. Policía de P.R.*, 158 DPR 320, 340-341 (2002), citando a *Pueblo v. Ortega Santiago*, supra, págs. 211-212. Véase, además, *BPPR v. SLG Gómez-López*, supra.

Así, pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho. *Rivera et al. v. Arcos Dorados et al.*, supra. En otras palabras, la discreción no opera en un vacío y tampoco puede ser en "función al antojo o voluntad de uno, sin tasa ni limitación alguna". *BPPR v. SLG Gómez-López*, supra, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

Como primer y único señalamiento de error, la parte apelante esgrime que el Tribunal de Primera Instancia erró al ordenar el pago de $187,581.52 por falta de pago del IVU Municipal retenido, así como los intereses, recargos y penalidades, a Temperature Developers Investment Group, Corp., aun cuando de los documentos presentados y admitidos en evidencia indicaban una dirección incorrecta en el expediente de rentas internas del Municipio de Isabela. Consecuentemente, argumenta que el referido error en la dirección privó al tribunal de jurisdicción para atender la acción de cobro de dinero hecha por el Municipio ya que planteaba un problema de debido proceso de ley. Asimismo, argumenta que la falta de notificación adecuada iba en contra de los establecido en la Ley de Patentes Municipales por obviar el procedimiento establecido de notificación de deficiencias en el pago de patentes municipales, IVU municipal o cualquier contribución adeudada al Municipio. No le asiste la razón. Veamos.

En esencia, la parte apelante aduce que el error en la dirección utilizada por el Municipio para hacerle llegar los requerimientos de pago estaba viciado al no proveerle una notificación adecuada en menoscabo del debido proceso de ley. Al hacer el debido estudio del expediente y de los documentos presentados ante nos, colegimos que el Municipio sí notificó adecuadamente a la parte apelante para que esta se diera por enterada del cobro de la patente y del IVU municipal. Más aun, algunas de las notificaciones provistas a la parte apelante le fueron entregadas físicamente, y aparece su firma corroborando la entrega. Por lo tanto, no le asiste la razón en su planteamiento.

Es meritorio aclarar que, tanto en el error como en la argumentación de este, la parte apelante utiliza indistintamente la cuantía impuesta a la parte apelante en patente municipal y en IVU municipal. No obstante, en el recurso sólo se apela la cantidad de $187,587.52 impuesta en IVU municipal. Por lo tanto, corresponde aplicar el Código de Rentas Internas. En la Sección 6010.10 (b) del Código de Rentas Interna, supra, se establece la definición de deficiencia según empleada en ley. La deficiencia es definida como el "monto por el cual la contribución impuesta por cualquier Subtítulo de este Código sobrepase el exceso de...". Se establece el exceso de la cantidad declarada como contribución por el contribuyente en su planilla o en su declaración de impuestos si se rindió una planilla o declaración de impuestos por el contribuyente y se declaró en la misma alguna cantidad como contribución o impuesto. Del mismo modo, se establece el exceso del monto de las recaudaciones hechas según definidas en el apartado (c)(2). De una lectura de la ley, se desprende que el proceso ordinario de notificación de deficiencias comienza cuando el comercio cumple con su deber contributivo. Al cumplir con las debidas radicaciones, cuando el Departamento de Hacienda de Puerto Rico, o en este caso

el Municipio, le notifica al contribuyente de la existencia de alguna deficiencia, el comercio tiene la protección del procedimiento estipulado en ley para impugnar la misma. De esta forma, se intenta proteger al comerciante al establecer un proceso de reconsideración de la cuantía que se le imputa en exceso de contribución. Cuando una persona omite radicar y pagar su planilla mensual de IVU, en la notificación que se le envía, se establece con claridad las consecuencias civiles y penales de la omisión. De igual forma, se informa que el incumplimiento podría conllevar el que sea referido para una investigación contributiva que incluya la preparación de planillas de oficio con sus correspondientes deficiencias contributivas conforme a la Sección 6051.05 del Código de Rentas Internas, supra. El Municipio cumplió con enviar la debida notificación. No obstante, la notificación de deficiencia no se establece como requisito obligatorio previo a incoar una reclamación judicial. El procedimiento ordinario de notificación de deficiencias surge luego de la existencia de la radicación de planilla con su correspondiente pago. En el caso de patentes, el procedimiento ordinario comienza luego de remitir el correspondiente informe de volumen. La preparación de planilla de oficio con sus correspondientes deficiencias es una opción que aparece en el Código para el Secretario de Hacienda. Por lo tanto, no es un requisito obligatorio previo por incoar una reclamación judicial.

En el caso de autos, la parte apelante omitió cumplir con su deber de radicar las declaraciones de IVU mensuales para los años fiscales previamente mencionados. De igual forma, omitió cumplir con su deber de hacer las declaraciones de volumen correspondientes en cumplimiento con la Ley de Patentes Municipales, supra. No obstante, pretende que este foro apelativo le releve de cumplir con su obligación contributiva, aplicando las disposiciones que provee nuestro ordenamiento jurídico para los

comerciantes y contribuyentes responsables que cumplen con su deber de radicar sus planillas de IVU y sus informes de volumen, según los establecido en el Código de Rentas Internas y en La Ley de Patentes Municipales. Cualquier otra interpretación de las referidas leyes iría en contra del propósito legislativo de ambas e iría en contra de la prohibición de evasión contributiva que promueve el legislador a través de ellas. Asimismo, iría en contra del corolario jurisprudencial que prohíbe la interpretación de una ley contributiva de manera que facilite la evasión de los tributos establecidos por la asamblea legislativa.

La parte apelante tenía conocimiento de su obligación de pago y, por lo tanto, al omitir el mismo estaba consciente de las consecuencias de su omisión, según se le informó en las múltiples notificaciones. Al igual que debía prever que estaría sujeto a que el Municipio le solicitara el pago correspondiente a través de una acción judicial al omitir su deber contributivo como comerciante en detrimento del erario público.

En su análisis, el TPI hizo una acertada distinción entre la deuda reclamada por el Municipio que correspondía a periodos para los cuales la parte apelante había radicado declaraciones de volumen de negocio y aquellos periodos para los que no había radicado declaraciones de volumen de negocio, ni planillas mensuales de impuesto sobre ventas y uso. El Tribunal determinó mediante *Sentencia* que al haber radicado las declaraciones de volumen de negocio de venta y servicios de mantenimiento de acondicionadores de aire para los años fiscales 2005-2006, 2006-2007, 2007-2008, 2008-2009 y 2009-2010, le aplicaba el periodo prescriptivo dispuesto en la Sección 19 de la Ley de Patentes Municipales, supra, para la tasación y el cobro de la patente. Por lo tanto, determinó que la deuda correspondiente a esos años estaba prescrita.

Sin embargo, el foro primario determinó que, debido a que los codemandados no rindieron declaraciones de volumen de negocio, procede aplicarse la excepción al periodo de prescripción dispuesto en la sección 20 de la Ley de Patentes Municipales, supra, al cobro de las patentes municipales de negocio de venta y servicios de mantenimiento de aire para los años fiscales 2010-2011, 2011-2012, 2012-2013, 2014-2015, 2016-2017, 2018-2019, 2019-2020, y al cobro de patente municipal por arrendamiento de locales comerciales para los años fiscales 2011-2012, 2013-2014, 2014-2015, 2015-2016, 2016-2017, 2017-2018, 2018-2019 y 2019-2020. Además, el Tribunal determinó que la deuda de $187,581.52 por concepto de IVU Municipal al igual que las anteriores, se trataba de una deuda vencida, líquida y exigible que no se encontraba prescrita.

Luego de un examen sosegado del expediente, concluimos que el TPI fue prudente en el manejo del caso a la luz de los documentos presentados por las partes, las solicitudes que tuvo ante su consideración y el derecho aplicable. En el ejercicio de su discreción, emitió correctamente el dictamen apelado en el presente recurso. El Código de Rentas Internas provee, a modo de excepción, que en los casos de tasación por omisión contributiva se pueda iniciar un proceso judicial de cobro en cualquier momento. De esta forma, y contrario a lo argumentado por la parte apelante, el foro primario tenía jurisdicción para atender el presente caso. Por todo lo antes mencionado, y en ausencia de abuso de discreción, prejuicio, error manifiesto o parcialidad en el dictamen del foro de instancia, colegimos que debe prevalecer el dictamen apelado.

**IV**

Por las razones que anteceden, *confirmamos* el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones