Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| SUN WEST MORTGAGE COMPANY, INC.<br><br>*Apelada*<br><br><br>v.<br><br><br>VANESSA AYALA OCASIO<br><br>*Apelante* | KLAN202400897 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Manatí<br><br>Caso Núm.: MT2018CV00275 (Salón 102 Sala Superior)<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca por la Vía Ordinaria |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 22 de enero de 2025.

Comparece la señora Vanessa Ayala Ocasio (señora Ayala Ocasio o apelante), la cual solicita la revocación de la *Sentencia*[1] emitida por el Tribunal de Primera Instancia, Sala Superior de Manatí, el 3 de julio de 2024 y notificada el 8 de agosto del mismo año (TPI o foro apelado). Mediante el referido dictamen, el foro apelado declaró *Ha Lugar* la *Enmienda a Solicitud de Sentencia Sumaria* y, por consiguiente, la *Demanda* presentada por Sun West Mortgage Company, Inc. (Sun West o apelada). De igual forma, en dicha *Sentencia* el TPI declaró *No Ha Lugar* la *Reconvención* presentada por la apelante, la cual desestimó *con perjuicio.*

Ante este foro se presenta una controversia referente al proceso de mediación compulsoria en un caso de ejecución de hipoteca. Principalmente, examinamos si el proceder del acreedor hipotecario fue conforme a la buena fe y si la Ley Núm. 184-2012 carece de pautas reglamentarias que vicien de arbitrariedad el

---

[1] Véase, Apéndice del recurso de *Apelación*, págs. 2-13.

Número Identificador
SEN2025_____

proceso de la mediación. Tras examinar el recurso de apelación y revisado de *novo* los autos del caso, este Tribunal **confirma** la *Sentencia* apelada, puesto que (1) entendemos que procedió de buena fe el acreedor hipotecario y (2) el proceso de mediación está regulado por el Reglamento de Métodos Alternos para la Solución de Conflictos.

## I.

Conforme al expediente, el caso ante nos dio inicio el 30 de diciembre de 2014, cuando la apelante suscribió un pagaré hipotecario a favor de Sun West por la suma principal de $116,000.00, con una tasa de interés del 3.75% anual, y con vencimiento el 1 de enero de 2045. Dicho pagaré fue suscrito bajo el testimonio número 6529 ante el notario Rafael Maldonado Pérez[2]. En la misma fecha, la señora Ayala Ocasio otorgó la Escritura Número 410 de Primera Hipoteca ante el mismo notario, en la cual constituyó una hipoteca voluntaria sobre la propiedad ubicada en la Urb. City Paradise, 37 Calle 4, Barceloneta, PR 00617[3].

Ante el incumplimiento de la apelante, se inició el proceso de Mitigación de Pérdidas, también conocido como "Loss Mitigation". No obstante, el proceso no pudo concretarse efectivamente, debido a que, las solicitudes de mitigación de pérdidas que la señora Ayala Ocasio presentó estaban incompletas y no entregó los documentos adicionales requeridos.

En vista de que la apelante no completó adecuadamente la solicitud, el 5 de noviembre de 2018, Sun West presentó una *Demanda*[4] de ejecución de hipoteca por la vía ordinaria contra la señora Ayala Ocasio. Por su parte, el 1 de marzo de 2019, la señora Ayala Ocasio presentó *Contestación a Demanda y Reconvención*. En

---

[2] Entrada #37, Ajeno 1 de Sistema Unificado de Manejo y Administración de Casos SUMAC.
[3] Entrada #37, Ajeno 2 de SUMAC.
[4] Véase, Apéndice del recurso de *Apelación,* págs. 14-163. Fecha de anotación en SUMAC el 12 de noviembre de 2018.

ella, negó las alegaciones de la *Demanda* y expuso sus defensas afirmativas. Consecuentemente, la apelante adujo que el proceso de Mitigación de Pérdidas había sido atropellado por la mala fe de Sun West y alegó que fue inducida a incumplir con sus pagos hipotecarios.

En el interín de que la apelada presentara su contestación a la *Reconvención* de la señora Ayala Ocasio, el 15 de febrero de 2019, el caso de epígrafe fue referido al Centro de Mediación de Conflictos (CMC) para un proceso de mediación compulsoria[5].

El 6 de marzo de 2019, la apelada presentó *Contestación a Reconvención*, en la cual rechazó las alegaciones de la apelante, debido a que, desde un principio manifestó su disposición para atender las solicitudes del proceso de Mitigación de Pérdidas[6].

El 18 de marzo de 2019, la apelante presentó una *Moción Solicitando Extensión de Término en Casos de Ejecución de Hipoteca*[7], en la cual solicitó un cambio en la fecha para la sesión de mediación en el CMC del 14 de marzo de 2019 para el 2 de mayo de 2019 y el TPI la declaró *Ha Lugar*. Llegado el día de la reunión, la CMC devolvió el caso al TPI, debido a que, la apelante no asistió a la sesión de mediación[8].

En vista de lo anterior, el TPI señaló una vista sobre el estado de los procedimientos para el 24 de julio de 2019[9]. Según surge de la *Minuta*[10], la apelante no compareció a dicha vista. Por ello, la apelada alegó que la señora Ayala Ocasio había incumplido con los términos y condiciones acordados, y prueba de eso fue su incomparecencia a la vista. Ante los múltiples incumplimientos por parte de la apelante, Sun West, solicitó un término de treinta (30)

---

[5] Entrada #11 de SUMAC.
[6] Entrada #14 de SUMAC.
[7] Entrada #18 de SUMAC.
[8] Véase, *Moción Informativa en Casos de Ejecución de Hipoteca* y su anejo, Entrada #30 de SUMAC.
[9] Entrada #31 de SUMAC.
[10] Entrada #36 de SUMAC.

días a partir del 29 de julio de 2019 para presentar una solicitud de sentencia sumaria. Por su parte, el TPI declaró *Ha Lugar* la solicitud de la apelada para someter la moción dispositiva.

El 29 de agosto de 2019, Sun West presentó *Solicitud de Sentencia Sumaria*. Por su lado, el 23 de septiembre de 2019, la señora Ayala Ocasio presentó una *Solicitud Urgente de Referido a Mediación Compulsoria según dispone la Ley 38 del 2019*[11]. Evaluada la solicitud de la apelante, el TPI declaró *Ha Lugar* la moción y refirió el caso nuevamente al CMC el 12 de noviembre de 2019[12]. En cuanto a la *Solicitud de Sentencia Sumaria* presentada por la apelada, la misma quedó en suspenso hasta tanto y en cuanto se tuviera el resultado del CMC[13].

El 18 de octubre de 2019[14], el TPI emitió una *Sentencia*[15] decretando la paralización de los procedimientos. En consecuencia, el 6 de noviembre de 2019, Sun West presentó una solicitud de reconsideración[16]. En ella, adujo que, según lo dispuesto en el ordenamiento procesal, la señora Ayala Ocasio venía obligada a oponerse a la moción dispositiva y no a presentar una solicitud de referido a mediación compulsoria. Luego de varios asuntos procesales, se ordenó la continuación de la paralización de los procedimientos del caso de marras[17].

Así las cosas, el 10 de marzo de 2020, Sun West presentó una *Moción Solicitando Continuación de los Procedimientos y Reiterando Solicitud de Sentencia Sumaria*[18]. Evaluada la moción, el TPI emitió una *Resolución*[19] en la que dejó sin efecto

---

[11] Entrada #39 de SUMAC.
[12] Entrada #40, #41 y #42 de SUMAC.
[13] *Íd.*
[14] Notificada el 22 de octubre de 2019.
[15] Entrada #42 de SUMAC.
[16] Véase, *Reconsideración a Solicitud de Referido a Mediación Compulsoria*, Entrada #43 de SUMAC.
[17] Entrada #54 de SUMAC.
[18] Entrada #56 de SUMAC.
[19] Entrada #57 de SUMAC.

la *Sentencia* dictada el 18 de octubre de 2019 y ordenó la continuación de los procedimientos.

Posteriormente, el caso se paralizó una vez más, debido a la moratoria en ejecuciones hipotecarias impuesta por el gobierno federal en respuesta a la pandemia mundial causada por el coronavirus (COVID-19).

Transcurrido algún tiempo, el 7 de septiembre de 2021, Sun West presentó una *Moción para la Continuación de los Procedimientos y Reiterando Solicitud de Sentencia Sumaria*[20]. Por su parte, el TPI le ordenó a la señora Ayala Ocasio exponer su posición y de no comparecer, se dictaría Sentencia Sumaria[21].

Tras la oposición de la apelante para la continuación de los procedimientos, el 17 de noviembre de 2021[22], el foro apelado emitió una *Orden de Referido al Centro de Mediación de Conflictos en Casos de Ejecución de Hipotecas*[23].

Meses más tarde, el TPI emitió una Orden otorgándole diez (10) días a Sun West para que informara el estatus de la mediación[24]. El 13 de mayo de 2022, la apelada presentó una *Moción para la Continuación de los Procedimientos*[25], pues la apelante no compareció a la vista de mediación del 20 de abril de 2022. De igual forma, reiteró su solicitud para que se dictara Sentencia Sumaria. Por otro lado, la señora Ayala Ocasio presentó una *Moción clarificando el error informativo en la moción titulada "Moción para la Continuación de los Procedimientos" y solicitud de remedios*[26]. En ella, adujo que se le notificó de la vista el 13 de abril de 2022 y que ese mismo día le informó al CMC que el horario pautado para la vista no era viable, ya que era docente en la Universidad de Puerto Rico,

---

[20] Entrada #65 de SUMAC.
[21] Entrada #66 de SUMAC.
[22] Notificada el 24 de noviembre de 2021.
[23] Entrada #75 de SUMAC.
[24] Entrada #76 de SUMAC.
[25] Entrada #77 de SUMAC.
[26] Entrada #78 de SUMAC.

Recinto de Rio Piedras. Tras reiterar mediante correo electrónico que la fecha de la vista no era viable y ante la ausencia de respuesta por parte del CMC, el 20 de abril de 2022, el mismo día de la vista, se comunicaron directamente con la mediadora, le explicaron la situación laboral y la misma la excusó de la reunión. Así pues, el TPI ordenó la continuación de la mediación de conflictos[27].

Luego de que Sun West pidió paralizar los procedimientos en el caso de autos, debido a que había una moratoria para los casos de ejecución de hipotecas en hogares con préstamos garantizados por el Departamento Federal de Vivienda y Desarrollo Urbano (HUD por sus siglas en ingles) y la Administración Federal de Vivienda (FHA por sus siglas en ingles), el TPI acogió la petición y el caso fue referido nuevamente al CMC[28].

El 23 de febrero de 2023, el CMC presentó una *Moción Informativa sobre Resultado de Caso de Ejecución de Hipoteca Atendido Mediante Servicio de Videoconferencia*[29]. En ella informó que el caso se devolvía por ausencia, pues Sun West no compareció.

Así las cosas, el 24 de febrero de 2023, la apelante solicitó la desestimación de la *Demanda*, en la que argumentó que la falta de la comparecencia de Sun West al proceso de mediación justificaba la desestimación[30]. Por su parte, la apelada presentó su oposición a la moción presentada por la señora Ayala Ocasio[31]. Evaluados ambos planteamientos, el foro apelado emitió una *Resolución* el 15 de marzo de 2023[32] y determinó *Ha Lugar* a la Oposición de Sun West y *No Ha Lugar* la solicitud de desestimación de la apelante[33].

Inconforme con lo anterior, el 30 de junio de 2023, la señora Ayala Ocasio volvió a presentar una *Moción Solicitando*

---

[27] Entrada #79 de SUMAC.
[28] Entradas #82, #83, #84, #85 y #86 de SUMAC.
[29] Entrada #87 de SUMAC.
[30] Entrada #88 de SUMAC.
[31] Entrada #93 de SUMAC.
[32] Notificada el 16 de marzo de 2023.
[33] Entrada #94 de SUMAC.

*Desestimación del Pleito por falta de Buena Fe de la Parte Demandante, a tenor del Artículo 3 de la Ley 151-2020 [nuevamente]*[34]. Mientras, Sun West se volvió a oponer a la solicitud de desestimación[35]. El 18 de julio de 2023[36], el TPI emitió otra *Resolución* donde reiteró su decisión de declarar *No Ha Lugar* la solicitud de desestimación presentada por la apelante y, a su vez, le ordenó a la apelada que dentro de quince (15) días informara el curso de acción a seguir[37].

Nuevamente inconforme con la determinación del foro apelado, la señora Ayala Ocasio presentó una *Moción Solicitando Reconsideración* en la cual reiteró que el caso debía ser desestimado por falta de diligencia de Sun West[38]. El 10 de agosto de 2023, la apelada presentó una *Moción en Cumplimiento de Orden y en Oposición a "Moción Solicitando Reconsideración y en Solicitud de Término"*[39]. En ella, enfatizó que el caso no se debía desestimar pues ha sido activa en el mismo y que, el curso a seguir es esperar a que el TPI emitiera una decisión sobre la *Moción de Sentencia Sumaria*. A su vez, le solicitó al TPI un término de diez (10) días para enmendar la *Moción de Sentencia Sumaria* dado que algunas de las cifras numéricas utilizadas en la moción habían cambiado desde el momento en que la misma fue presentada. Así pues, el 10 de agosto de 2023[40] el TPI emitió una Resolución donde le concedió los diez (10) días a la apelada para que enmendara la *Moción de Sentencia Sumaria* y declaró *No Ha Lugar* la solicitud de reconsideración presentada por la apelante[41].

---

[34] Entrada #95 de SUMAC.
[35] Entrada #97 de SUMAC.
[36] Notificada el 19 de julio de 2023.
[37] Entrada #98 de SUMAC.
[38] Entrada #99 de SUMAC.
[39] Entrada #103 de SUMAC.
[40] Notificada el 14 de agosto de 2023.
[41] Entrada #106 de SUMAC.

En cumplimiento con lo solicitado, el 24 de agosto de 2023, Sun West presentó la *Enmienda a Solicitud de Sentencia Sumaria*[42]. Por su parte, la señora Ayala Ocasio presentó su oposición a la enmienda de la moción dispositiva y adujo que el tribunal carecía de jurisdicción, pues el proceso de mediación nunca había iniciado, por lo tanto, el foro primario debía declarar *No Ha Lugar* la *Moción de Sentencia Sumaria*[43]. Evaluadas las posiciones de ambas partes, el TPI refirió nuevamente el caso al CMC y decidió que la *Solicitud de Sentencia Sumaria* quedaba en suspenso hasta que se obtuviera el resultado de la mediación[44].

Tras varios incidentes procesales, el 10 de enero de 2024, el CMC presentó una moción informativa. En ella, informó que el 2 de noviembre de 2023, se les notificó a las partes que tenían que comparecer a la mediación compulsoria el 30 de enero de 2024[45]. Posteriormente, la CMC volvió a emitir otra moción informativa, en la cual nuevamente citó a las partes para el 15 de abril de 2024[46]. Esto, debido a que las partes no habían completado el proceso de mediación. El 16 de abril de 2024, la CMC presentó una *Moción Informativa sobre el Resultado de Caso de Ejecución de Hipoteca Atendido Mediante Servicio de Videoconferencia*, en la cual informó que llevada a cabo la cita de mediación el 15 de abril de 2024, el caso se devolvía al TPI *Sin Acuerdo*[47].

Así las cosas, el 26 de abril de 2024, Sun West presentó una moción solicitando que se paralizaran los procedimientos, puesto que la señora Ayala Ocasio había iniciado un proceso de evaluación ante el Departamento de Mitigación de Pérdidas de la apelada[48]. Por consiguiente, el TPI ordenó la paralización de los procedimientos y

---

[42] Entrada #107 de SUMAC.
[43] Entrada #109 de SUMAC.
[44] Entrada #118 de SUMAC.
[45] Entrada #126 de SUMAC.
[46] Entrada #130 de SUMAC.
[47] Entrada #133 de SUMAC.
[48] Entrada #135 de SUMAC.

a que dentro de treinta (30) días, Sun West, informara el proceso de evaluación de mitigación de pérdidas y el curso de acción a seguir[49]. Luego de poco más de un mes, la apelada presentó una moción solicitando la continuación de los procedimientos, ya que la evaluación de mitigación de pérdidas había concluido. De igual manera, reiteró su solicitud para que el foro apelado dictara *Sentencia Sumaria*[50].

Evaluada la solicitud de Sun West, el 3 de julio de 2024[51] el TPI emitió una *Sentencia*[52] en la cual declaró *Ha Lugar* la *Enmienda a Solicitud Sentencia Sumaria* y la *Demanda* presentada por la apelada. A su vez, el TPI declaró *No Ha Lugar* a la *Reconvención* presentada por la señora Ayala Ocasio. Inconforme con la determinación del TPI, la apelante presentó una *Moción de Reconsideración*[53] el 23 de julio de 2024. En ella, la señora Ayala Ocasio solicitó la anulación de la *Sentencia* y el reenvío del caso a mediación. Por su parte, Sun West se opuso ante la moción presentada por la apelante[54]. Finalmente, el TPI declaró *No Ha Lugar* la *Moción de Reconsideración* de la apelante[55].

Inconforme, la apelante acude ante nos y le imputa al foro apelado la comisión de los siguientes errores:

> **Primer error**: El Tribunal erró al no permitir desestimar la mediación por falta de buena fe del acreedor hipotecario, habiendo sido esto levantado por la parte demandada en varias ocasiones.
>
> **Segundo error**: Cometió error el Tribunal de Primera Instancia, al no entrever el reclamo de la parte demandada de comparece[r] a la sesión de mediación no asistida por su representante legal. Esto en violación a la normativa jurídica y jurisprudencial, a partir del caso de **Scotiabank v. Machargo**[,] 2017 TSPR 179.
>
> **Tercer error**: Carece de un reglamento vigente la Ley 184-2012, lo que expone a las partes, en particular a los deudores

---

[49] Entrada #136 de SUMAC.
[50] Entrada #137 de SUMAC.
[51] Notificada el 8 de julio de 2024.
[52] Entrada #139 de SUMAC.
[53] Entrada #140 de SUMAC.
[54] Entrada #142 de SUMAC.
[55] Entradas #145 y #148 de SUMAC.

hipotecarios a prácticas arbitrarias por parte de los mediadores.

Por su parte, el 1 de noviembre de 2024, la apelada compareció mediante escrito intitulado *Moción de Desestimación y Alegato en Oposición a Apelación.* Sun West sostuvo que procedía la desestimación de la apelación de la señora Ayala Ocasio, debido a que incumplió con la Regla 16 (E) (1) (d) y (e) del Reglamento del Tribunal de Apelaciones[56]. Específicamente, la apelada alegó que a pesar de que el eje de la *Sentencia* apelada eran las *Mociones de Sentencia Sumaria,* la señora Ayala Ocasio no las incluyó en el apéndice del escrito de *Apelación.* En la alternativa de que este foro intermedio no desestimara el mismo, solicitó que se confirmara la *Sentencia* emitida por el foro apelado.

Con el beneficio de la comparecencia de ambas partes litigantes, procedemos a resolver.

## II.

### -A-

El Tribunal Supremo de Puerto Rico ha expresado en varias ocasiones que la sentencia sumaria es un remedio extraordinario y discrecional que sólo se debe conceder cuando no existe una controversia genuina de hechos materiales y lo que resta es aplicar el derecho[57]. En términos generales, al dictar sentencia sumaria, el tribunal deberá hacer lo siguiente:

> (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal;
> (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda

---

[56] 4 LPRA Ap. XXII-B, R. 16 (E) (1) (d)-(e):
(1) El escrito de apelación, salvo lo dispuesto en el subinciso (2) de este inciso y en la Regla 74, incluirá un Apéndice que contendrá una copia literal de:
(d) toda resolución u orden, y toda moción o escrito de cualesquiera de las partes que forme parte del expediente original en el Tribunal de Primera Instancia, en las cuales se discuta expresamente cualquier asunto planteado en el escrito de apelación, o que sean relevantes a éste;
(e) cualquier otro documento que forme parte del expediente original en el Tribunal de Primera Instancia y que pueda serle útil al Tribunal de Apelaciones para resolver la controversia.
[57] *Maldonado v. Cruz,* 161 DPR 1, 39 (2004).

que no han sido controvertidas o refutadas en forma alguna por los documentos[58].

Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando existan hechos materiales y esenciales controvertidos; cuando haya alegaciones afirmativas en la demanda que no han sido refutadas; cuando surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o cuando como cuestión de derecho, no procede[59]. La sentencia sumaria se puede dictar a favor o en contra de la parte que la solicita, según proceda en Derecho[60].

Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y solo procederá cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos[61]. De tal manera, solo procede dictar sentencia sumaria cuando surge claramente que el promovido por la moción no puede prevalecer bajo ningún supuesto de hechos y que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia[62]. Cuando no existe una clara certeza sobre todos los hechos de la controversia, no procede una sentencia sumaria[63]. Cualquier duda sobre la existencia de una controversia sobre los hechos materiales, debe resolverse contra la parte promovente[64]. Toda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria[65]. Así pues, tomando en consideración que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal

---

[58] *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004).
[59] *Íd.*, págs. 333-334.
[60] *Maldonado v. Cruz, supra.*
[61] *Íd.*, pág. 334.
[62] *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714 (1986).
[63] *Metrop. de Préstamos v. López de Victoria*, 141 DPR 844 (1996).
[64] *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563 (1997).
[65] Véase, *Piñero v. AAA*, 146 DPR 890 (1998); *Audiovisual Lang. v. Sist. Est. Natal Hnos., supra.*

utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley"[66].

Es importante mencionar que, este Tribunal utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una moción de sentencia sumaria[67]. Por consiguiente, los criterios que este foro intermedio debe tener presentes al atender la revisión de una sentencia sumaria son los siguientes:

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[68].

**-B-**

La *Ley para Mediación Compulsoria y Preservación de tu Hogar en Procesos de Ejecuciones de Hipotecas de una Vivienda Principal*, Ley Núm. 184-2012[69], se aprobó con el propósito de proteger la residencia principal de los deudores hipotecarios ante los efectos de la crisis económica[70]. Mediante dicha ley, se estableció un procedimiento de mediación entre el acreedor y el deudor hipotecario en todos los procesos de ejecución de hipoteca sobre aquellas propiedades que sean la vivienda principal del deudor. Ello, a los fines de buscar alternativas y evitar la ejecución de la hipoteca antes de proceder con la misma[71].

---

[66] *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990) (énfasis suplido).
[67] *Íd.*
[68] *Roldan Flores v. M Cuebas*, 199 DPR 664, 679 (2018).
[69] 32 LPRA sec. 2881 *et seq.*
[70] *Banco. Santander v. Correa García*, 196 DPR 452, 461 (2016).
[71] Artículos 2(b) y 3 de la Ley Núm. 184-2012, 32 LPRA secs. 2881(b) y 2882; *Exposición de Motivos*, Ley Núm. 184-2012.

Sobre la mediación compulsoria, el Artículo 2(b) de la Ley Núm. 184-2012 provee la siguiente definición:

En los casos en que un acreedor hipotecario pueda iniciar un proceso de ejecución de hipoteca, o el cual pueda culminar en la venta judicial, de una propiedad residencial que constituya una vivienda principal, se celebrará una reunión compulsoria de mediación conducida en una sala o salón del Tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, pero que no podrá ser en las oficinas del acreedor hipotecario o de sus abogados o representantes legales o asesores, y presidida por un mediador seleccionado por las partes, en el curso de un procedimiento de ejecución de hipoteca sumario y/o ordinario. **En dicha reunión el acreedor hipotecario notificará al deudor hipotecario todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal**. El propósito u objetivo será poder llegar a un acuerdo o modificación que permita al deudor hipotecario establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal[72].

Como análisis de umbral, debemos determinar si las enmiendas introducidas a la Ley Núm. 184-2012 luego de entablada la presente causa de acción —entiéndase, las leyes Ley Núm. 268-2018, Ley Núm. 38-2019, Ley Núm. 151-2020, Ley Núm. 73-2022— tienen efecto retroactivo sobre el presente pleito. Evaluado los hechos a la luz del derecho aplicable, determinamos que las enmiendas sí tienen efecto retroactivo sobre el caso de marras.

En lo aquí pertinente, en el momento en que se radicó el caso ante el TPI al presentarse la *Demanda* de epígrafe el 5 de noviembre de 2018, el Artículo 3 de la Ley Núm. 184-2012, rezaba de la siguiente forma:

Será deber del Tribunal, en los casos que considere necesarios, dentro de los sesenta (60) días después de presentada la alegación responsiva por parte del deudor hipotecario demandado y antes de que se señale la conferencia con antelación al juicio, bajo apercibimiento de desacato, una vista o acto de mediación compulsorio que presidirá un mediador seleccionado por las partes y que tendrá lugar en cualquier salón o sala del tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal. Esto será un requisito jurisdiccional en los procesos a llevarse a cabo ante los Tribunales de Puerto Rico que envuelvan un proceso para la ejecución de una hipoteca

---

[72] 32 LPRA sec. 2881(b) (énfasis suplido).

garantizada con una propiedad residencial que constituya una vivienda personal del deudor o de los deudores sin cuyo cumplimiento no podrá dictarse sentencia o celebrarse la venta judicial de la propiedad gravada con la hipoteca cuya ejecución se solicita. De no presentarse el deudor, al procedimiento de mediación o de no cumplir con el acuerdo alcanzado con el acreedor hipotecario como resultado del proceso de mediación, la institución financiera actuará de la forma acordada en el contrato o pagaré efectuado el día de la transacción original de hipoteca. El deudor tendrá derecho únicamente a un procedimiento de mediación en la acción civil que se le presente para la ejecución de la hipoteca sobre la propiedad residencial que constituya su vivienda principal, siempre y cuando el deudor hipotecario demandado no se encuentre en rebeldía, o que por alguna razón o sanción sus alegaciones hayan sido suprimidas o eliminadas por el tribunal[73].

Posteriormente, La Ley Núm. 184-2012 fue enmendada por las leyes Ley Núm. 268-2018, Ley Núm. 38-2019, Ley Núm. 151-2020, Ley Núm. 73-2022, con el propósito de, entre otras cosas, establecer responsabilidades legales adicionales del acreedor hipotecario y aclarar las prexistentes. De tal manera, el Artículo 3 de la Ley 184-2012 ahora expresa que:

El deudor tendrá derecho a un procedimiento de mediación en la acción civil que se le presente para la ejecución de la hipoteca sobre la propiedad residencial que constituya su vivienda principal.
. . . .
**Será deber del Tribunal, al presentarse la demanda y diligenciarse el emplazamiento, citar a las partes a una vista o acto de mediación compulsoria** que presidirá un mediador seleccionado por las partes y que tendrá lugar en cualquier salón o sala del tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, **en la cual se le informará de formas verbal y por escrito al deudor hipotecario todas las alternativas disponibles en el mercado de acuerdo al tipo de préstamo e inversionista para poder evitar la privación del inmueble al deudor, ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal**, incluyendo aquellas alternativas que no dependen de la capacidad económica del deudor, como lo son la venta corta ("short sale"), la dación en pago, entrega voluntaria de título, y otros remedios que eviten que el deudor pierda su hogar o que, de perderlo, se minimicen las consecuencias negativas sobre el deudor.
**El representante del acreedor o inversionista que asista al acto o vista de mediación deberá ser, o en la alternativa, tener acceso en todo momento del proceso a un oficial de la institución financiera con la autoridad para llegar a acuerdos de pago, modificación o cualquier otra alternativa de retención o disposición de la propiedad**, que estarán solo sujetos a la aprobación final de un "underwriter", según aplique. Además, el representante entregará al deudor evidencia escrita por parte del acreedor

---

[73] 32 LPRA sec. 2882 (énfasis suplido) (enmendado).

que certifique que el representante tiene la capacidad representativa para actuar a nombre del acreedor.

En dicha vista o acto de mediación, el acreedor hipotecario entregará al deudor hipotecario, una lista de los documentos necesarios y pendientes, si alguno, para evaluar la(s) alternativa(s) que puedan ser aplicables al caso del deudor hipotecario, quien entregará los documentos solicitados en un tiempo razonable, cumpliendo con la reglamentación federal aplicable. Antes de la siguiente vista o acto de mediación correspondiente, deberá entregar los documentos solicitados en una primera vista, o en su defecto, evidencia de que está haciendo las gestiones para obtener los referidos documentos. **Si el deudor hipotecario incumple con su obligación de someter los documentos solicitados, dentro de un tiempo razonable y sin justa causa, se entenderá que ha desistido del proceso de mediación compulsoria, y en tal caso, el Tribunal continuará el proceso judicial iniciado por el acreedor hipotecario. El incumplimiento de cualquiera de las partes a producir documentos para la primera sesión no será motivo para terminar la mediación**. El representante del acreedor o inversionista le informará al deudor para cuales de las alternativas cualifica y se le explicarán las razones para no estar disponibles las alternativas para las que no cualifique.

. . . .

Lo aquí dispuesto será un **requisito jurisdiccional** en los procesos a llevarse a cabo ante los Tribunales de Puerto Rico que envuelvan un proceso para la ejecución de una hipoteca garantizada con una propiedad residencial que constituya una vivienda principal del deudor o de los deudores, sin cuyo cumplimiento no podrá dictarse sentencia o celebrarse la venta judicial de la propiedad gravada con la hipoteca cuya ejecución se solicita.

**De no presentarse el deudor hipotecario al procedimiento de mediación en cualquiera de sus etapas, sin que medie justificación adecuada; de no entregar al acreedor los documentos solicitados en un tiempo razonable, según lo dispuesto en este Artículo, o de no cumplir con el acuerdo alcanzado con el acreedor hipotecario como resultado del proceso de mediación, se presumirá que voluntariamente el deudor hipotecario ha desistido del proceso de mediación compulsoria y dicho acreedor hipotecario procederá con la continuación del proceso de ejecución hipotecaria según corresponda**, incluyendo sin limitarse, a solicitar cualquier remedio que en derecho proceda o disponible en las Reglas de Procedimiento Civil de Puerto Rico y dicho acreedor actuará de la forma acordada en el contrato o pagaré efectuado el día de la transacción original de hipoteca. **De no presentarse el acreedor hipotecario, al procedimiento de mediación, en cualquiera de sus etapas, sin que medie justificación adecuada, o determinar el Tribunal que no se actuó de buena fe en cuanto al ofrecimiento de alternativas disponibles o la evaluación realizada al deudor y luego de haber dilucidado la controversia en vista evidenciaria, el Tribunal procederá a desestimar sin perjuicio la demanda presentada**[74].

El Artículo 9 del Código Civil de Puerto Rico contiene la regla general sobre retroactividad de las leyes en nuestro ordenamiento

---

[74] 32 LPRA sec. 2882 (énfasis suplido).

jurídico: "La ley no tiene efecto retroactivo, excepto cuando se dispone expresamente lo contrario. El efecto retroactivo de una ley, no puede perjudicar los derechos adquiridos al amparo de una ley anterior"[75]. Sobre este artículo, el Máximo Foro Judicial ha sostenido que solamente tiene el efecto de una **regla general de interpretación de estatutos**, no constituyendo sus disposiciones un principio rígido de aplicación absoluta[76]. Hemos de fijarnos que el propio Art. 9 del Código Civil establece un principio rector para guiar nuestra metodología hermenéutica cuando expresa el límite tajante de que el efecto retroactivo de una ley "no puede perjudicar los derechos adquiridos al amparo de una ley anterior". Por consiguiente, es permisible la interpretación retroactiva de una ley si su efecto no coartará derechos adquiridos de las partes o no impondrá gravámenes sobre sus deberes por conductas pasadas.

Central a nuestra metodología hermenéutica está la voluntad expresa o implícita del legislador al evaluar el estatuto[77]. A tales fines, el Tribunal Supremo ha sostenido que, ante la omisión de un mandato expreso del legislador, solamente procede impartirle efecto retroactivo a una ley cuando es obvio y patente el propósito legislativo en casos en los cuales la aplicación retroactiva es necesaria para corregir un grave mal social y así poder hacer justicia[78]. Si la nueva norma tiene el efecto de corregir o mejorar una anterior para conformarla más adecuadamente al estatuto que pretende enmendar, la retroactividad de la nueva norma no la hace nula de por sí[79].

Por otro lado, distinto es el panorama cuando se trata de normas procesales, pues el Alto Foro ha establecido que:

---

[75] 31 LPRA sec. 5323.
[76] *Vélez v. Srio. de Justicia*, 115 DPR 533, 542 (1984); *Warner Lambert Co. v. Tribunal Superior*, 101 DPR 378, 385 (1973).
[77] *Vélez v. Secretario de Justicia, supra,* pág. 542; *Warner Lambert Co. v. Tribunal Superior, supra*, pág. 386.
[78] *Nieves Cruz v. UPR*, 151 DPR 150, 159 (2000).
[79] *Licorería Trigo, Inc. v. Srio. Hacienda,* 94 DPR 270, 281 (1967).

> [L]a regla de hermenéutica que impide que la legislación retroactiva afecte derechos adquiridos aplica solamente a disposiciones estatutarias de carácter sustantivo y no a aquellas de carácter procesal. Éstas tienen efecto retroactivo y se deben aplicar con preferencia, por cuanto suponen mayor protección de los derechos en litigio. Así, y por lo general, las disposiciones procesales tienen efecto retroactivo y aplican a casos pendientes, salvo que la Asamblea Legislativa disponga lo contrario[80].

Así, la ley procesal aplica retroactivamente "a menos que surja claramente que la intención legislativa ha sido dejar subsistente el procedimiento anterior"[81]. Esto es, la presunción de irretroactividad se invierte para que se presuma su aplicación retroactiva. Para diferenciar entre una norma procesal y una sustantiva, la clasificación legislativa de la ley no es determinante, debe examinarse su naturaleza[82]. Aunque esta diferencia en definición no ha sido atendida por nuestro Tribunal Supremo en el contexto de la aplicación retroactiva de una ley, debemos afirmar que la diferencia entre una norma procesal y una sustantiva estriba en que la primera apunta a proteger o ejercer los derechos sustantivos que la ley provee.

Además, debemos señalar que en la jurisprudencia federal el análisis de la retroactividad toma las disposiciones de una ley en su individualidad, sin someter la ley en su totalidad a la determinación de la retroactividad de sus disposiciones[83]. Así, por ejemplo, es posible determinar "que una disposición que provee derecho a juicio por jurado puede aplicar retroactivamente, [mientras que] una cláusula de daños punitivos de la misma ley no puede. Esto se debe a la naturaleza de cada una"[84]. La naturaleza de la primera no genera efecto sobre derechos adquiridos ni impone gravámenes sobre ninguna parte, mientras la segunda impone un nuevo castigo.

---

[80] *Clases A, B, y C v. PRTC*, 183 DPR 666, 680 (2011) (citas omitidas).
[81] R. Elfren Bernier, *Aprobación e Interpretación de las Leyes en Puerto Rico* 242 (1963).
[82] *Pueblo v. Candelario*, 166 DPR 118, 127 (2005) (Sentencia).
[83] *Landgraf v. USI Film Products*, 511 US 244, 252-54 (1994).
[84] Zoé C. Negrón Comas, *Aplicación retroactiva de las leyes: Una propuesta de metodología hermenéutica*, 56 Rev. Jur. UIPR 431, 439 (2021-2022).

Aquí, la *Demanda* de epígrafe se presentó el 5 de noviembre de 2018, antes de que la Ley Núm. 184-2012 fuera enmendada por las leyes Ley Núm. 268-2018, Ley Núm. 38-2019, Ley Núm. 151-2020, Ley Núm. 73-2022. Es decir, al momento de las enmiendas a la ley, el caso de autos ya estaba pendiente ante el TPI. Asimismo, todas las enmiendas citadas contienen una cláusula de vigencia en la cual estatuyen que comenzarán a regir *inmediatamente después de su aprobación*. Consecuentemente, las enmiendas no exigen expresamente su aplicación retroactiva. Por consiguiente, hemos de tomar cada disposición pertinente del Artículo 3 de la Ley Núm. 184-2012 individualmente y evaluar su efecto retroactivo a la luz del derecho discursado.

Así las cosas, pasemos juicio sobre el efecto retroactivo de las mencionadas enmiendas a la Ley Núm. 184-2012. En las disposiciones pertinentes a nuestro caso, las enmiendas Ley Núm. 268-2018, Ley Núm. 151-2020, Ley Núm. 73-2022 introdujeron disposiciones de naturaleza procesal. Primero, la Ley Núm. 268-2018 aclaró que el requisito de citar a las partes para una mediación es un requisito jurisdiccional y no está sujeto a la discreción del tribunal, además aclaró de forma no limitativa las alternativas disponibles en el mercado que debe informar el acreedor hipotecario a su deudor. Segundo, la Ley Núm. 151-2020 aclaró que el representante que asista a la mediación debe estar autorizado para llegar a acuerdos entre el acreedor hipotecario y su deudor o de otra forma tener acceso en todo momento a un oficial con autorización para así proceder. Tercero, la Ley Núm. 73-2022 introdujo el término de treinta (30) días que tiene el tribunal para citar a una mediación contados a partir del diligenciamiento del emplazamiento y eliminó las referencias a la anotación de rebeldía. Siendo estas las circunstancias, es evidente que estamos frente a enmiendas de naturaleza procesal, pues apuntan a proteger o ejercer los derechos

sustantivos que la ley ya provee. Por lo cual, tienen efecto retroactivo y aplican al caso de autos.

Por su parte, la Ley Núm. 38-2019 establece responsabilidades legales adicionales para el acreedor hipotecario. A saber, la ausencia injustificada al proceso de mediación en cualquiera de sus etapas por parte del acreedor hipotecario **o el no actuar de buena fe en cuanto al ofrecimiento de alternativas disponibles e impedir el llegar a un acuerdo** conlleva la desestimación de la demanda. En otras palabras, esta enmienda impone un deber buena fe al acreedor hipotecario. Este es un deber no procesal por el cual debe velar el acreedor. No obstante, la naturaleza sustantiva de la norma no limita a este foro al interpretar su efecto retroactivo. Esto se funda en que la aludida enmienda tiene el propósito de corregir y mejorar la Ley Núm. 184-2012 para adecuarla a su intención y propósito original. Desde su adopción, la *Ley para Mediación Compulsoria* contemplaba en su definición de "Mediación Compulsoria" el deber del acreedor hipotecario de notificar "al deudor hipotecario todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca. El propósito u objetivo será poder llegar a un acuerdo o modificación que permita al deudor hipotecario establecer un acuerdo de pago... ". El imponer la consecuencia de la desestimación al incumplimiento con la buena fe no es suficiente para privar su efecto retroactivo bajo nuestro estado de derecho[85].

-C-

En *Banco. Santander v. Correa García*, nuestro Tribunal Supremo se expresó en cuanto a la naturaleza del requisito jurisdiccional de la citación a la mediación compulsoria. Al respecto, expresó que:

---

[85] Véase, *Scotianbank v. SLG Rosario-Castro*, 205 DPR 537, 557 (2020).

Debemos precisar que el requisito jurisdiccional que impone la Ley para Mediación Compulsoria **es que ocurra un señalamiento o citación para una vista de mediación**, pero la extensión de dicho procedimiento y su resultado dependerán de la conducta de las partes, según lo dispuesto en la Ley para Mediación Compulsoria. Es por ello que el tribunal podrá continuar con el proceso judicial cuando: (1) el acreedor acudió a la vista de mediación, pero el deudor no se presentó; (2) **las partes acudieron a la vista y se cumplieron los requisitos de ley, pero no llegaron a un acuerdo**, o (3) el deudor incumplió con los acuerdos contraídos como resultado del proceso de mediación. De una vez aclaramos que el proceso judicial **se deberá reanudar en la etapa en que se encontraba previo a que el tribunal ordenará la vista de mediación**[86].

Por lo tanto, si el tribunal incumple con el requisito de ordenar la celebración de la vista de mediación, carecerá de jurisdicción para emitir sentencias y ordenar ventas judiciales[87].

En *Scotianbank v. SLG Rosario-Castro*[88], el Tribunal Supremo aclaró que al amparo de la Ley Núm. 184-2012, es un requisito que la conducta de las partes en el proceso de mediación sea acorde con la buena fe. A tales fines, desglosó la conducta que deben seguir las partes en el proceso de la mediación:

En primer lugar, las partes deben ir preparadas para negociar y llegar a un acuerdo, de ser posible. En segundo lugar, las partes deben llevar a la vista o al acto de mediación toda la documentación que requiere el proceso de mediación y cualquier otra documentación necesaria. En tercer lugar, el representante del acreedor hipotecario debe tener autoridad para llegar a un acuerdo. Finalmente, los acreedores deben proveer a los deudores todas las alternativas disponibles en el mercado, tales como la modificación del préstamo, un análisis en virtud de los programas federales Home Affordable Modification Program (HAMP) y Home Affordable Refinance Program (HARP), entre otras. Lo anterior, incluye aquellas alternativas que no dependen de la capacidad económica de deudor, como lo son la venta corta (*short sale*), dación en pago, entrega voluntaria de título, entre otras[89].

### -D-

Por otra parte, la Ley Núm. 184-2012, facultó a la Oficina de Administración de los Tribunales (OAT) para que redactara y aprobara un reglamento, o enmendara cualquier reglamento aplicable, para establecer el proceso a seguir en su

---

[86] *Banco. Santander v. Correa García*, 196 DPR 452, 473-74 (2016) (énfasis suplido) (citas omitidas).
[87] *Oriental Bank v. Caballero García*, 212 DPR 671, 681 (2023).
[88] *Scotianbank v. SLG Rosario-Castro*, 205 DPR 537 (2020).
[89] *Id.*, págs. 557-58.

implementación[90]. En vista de ello, el 11 de junio de 2014 la OAT adoptó la Circular Núm. 30 del año fiscal 2012–2013 donde dispuso que:

> Los métodos alternos para la solución de conflictos, incluyendo la mediación, se regulan en la Rama Judicial a través del Reglamento de Métodos Alternos para la Solución de Conflictos, administrado por el Negociado de Métodos Alternos para la Solución de Conflictos. **Examinando el Reglamento de Métodos Alternos para la Solución de Conflictos a la luz de lo establecido en la Ley 184-2012, concluimos que el mismo no requiere enmiendas para ajustarlo al estatuto. El proceso de mediación se regirá por la Ley Núm. 19 de 22 de septiembre de 1983, según enmendada y el Reglamento de Métodos Alternos para la Solución de Conflictos, según enmendado. Esto incluye lo relacionado a los aspectos procesales, términos, comunicación entre las partes, el (la) mediador(a), el tribunal y otros. Cualquier aspecto que deba ser objeto de aclaración, se atenderá oportunamente por medio de directrices emitidas y divulgadas por el Negociado de Métodos Alternos para la Solución de Conflictos**. . .[91].

Dado que se facultó al Negociado de Métodos Alternos para la Solución de Conflictos (Negociado) para aclarar cualquier asunto, el 17 de junio de 2013 dicho ente publicó el mencionado Aviso General y consignó en su Art. 2 que:

> Por mandato de la Ley 184-2012, el Tribunal **podrá** ordenar **a las partes y a sus representantes legales** la comparecencia a una sesión obligatoria de mediación, bajo pena de desacato. Ante este mandato de ley, se dispone la participación obligatoria en un proceso de mediación, por tanto, las partes tendrán que comparecer y participar del proceso de mediación, aunque no estarán obligadas a concluir el mismo con un acuerdo[92].

Finalmente, puesto que se hizo extensivo el Reglamento de Métodos Alternos para la Solución de Conflictos (1998)[93], hemos de considerar la Regla 7.12, la cual preceptúa lo relativo a la comparecencia de los abogados en las sesiones de mediación voluntaria. La aludida regla establece que:

> **En las sesiones conjuntas se permitirá la participación de los abogados y de las abogadas con el consentimiento de las partes y del mediador o de la mediadora.** De aceptarse la participación de abogados(as) en las sesiones conjuntas, el mediador o la mediadora requerirá que cada parte esté así representada, y a los abogados y a las abogadas

---

[90] 32 LPRA sec. 2886.
[91] *Scotiabank v. SLG Machargo-Olivella*, 199 DPR 188, 195 (2017) (Sentencia).
[92] *Íd.*, pág. 196 (énfasis suplido).
[93] 4 LPRA Ap. XXIX.

les aplicarán las mismas normas que le apliquen a las partes[94].

**III.**

Nuestro Tribunal Supremo ha expresado que el tribunal apelativo, como foro revisor, utilizará los mismos criterios que el foro primario al determinar si procede una solicitud de sentencia sumaria. Es decir, el examen del foro intermedio ha de ser uno *de novo*, estamos en igual posición que el foro primario para aquilatar la solicitud de sentencia sumaria.

Por lo anterior, primeramente, pasaremos juicio sobre si, tanto la *Enmienda a Solicitud de Sentencia Sumaria* y la *Moción en Cumplimiento de Orden* para oponerse a la solicitud de sentencia sumaria, cumplieron con las formalidades impuestas por nuestro ordenamiento civil procesal.

Del análisis realizado, surge que Sun West cumplió en la presentación de la moción de sentencia sumaria bajo el crisol de la normativa jurisprudencial. No obstante, la apelante no cumplió con ninguno de los requisitos de la Regla 36 de las de Procedimiento Civil. Sin embargo, hay que puntualizar que es el análisis de la existencia o no de controversias esenciales y pertinentes lo que determina si procede dictar sentencia sumaria y no el que la parte promovida haya cumplido con las formalidades que exigen las Reglas en su oposición a la solicitud.  Es decir, el defecto de una oposición a la moción de sentencia sumaria no equivale a la concesión automática del remedio solicitado. Ello debido a que la concesión de la sentencia sumaria tiene que proceder conforme al derecho sustantivo aplicable.

Así las cosas, debemos determinar si la *Sentencia* emitida por el foro apelado estableció correctamente que no existían hechos en

---

[94] *Íd.*; Regla 7.12 (b) del Reglamento de Métodos Alternos para la Solución de Conflictos (énfasis suplido).

controversia que impidieran dictar sentencia sumaria desestimatoria. El TPI dictó las siguientes determinaciones de hechos:

1. El 30 de diciembre de 2014 la parte demandada, Sra. Vanessa Ayala Ocasio obtuvo un préstamo hipotecario de la parte demandante, Sun West Mortgage Company, Inc. y suscribió un Pagaré a favor de Sun West Mortgage Company, Inc., o a su orden, por la suma principal de $116,000.00, más intereses a razón de 3.75% anual y vencimiento el 1 de enero de 2045. Dicho Pagaré fue suscrito bajo testimonio número 6529 ante el Notario Rafael Maldonado Pérez.

2. En garantía del antedicho Pagaré, la parte demandada y deudora otorgó y constituyó una Hipoteca mediante la Escritura Número 410, otorgada el 30 de diciembre de 2014 ante el Notario Rafael Maldonado Pérez. La hipoteca antes mencionada consta inscrita en el Registro de la Propiedad.

3. La hipoteca a ejecutarse por la vía ordinaria recae sobre la propiedad que se describe como:
---URBANA: Solar radicado en la Urbanización City Paradise, localizada en el Barrio Palmas Altas, Sector Piche Central del término municipal de Barceloneta, Puerto Rico, el cual se identifica en el plano de inscripción de la urbanización con el número 37, con una cabida superficial de 42.44 metros cuadrados. En linderos: por el Norte, con solar privado, en una distancia de 10.360 metros; por el Sur, con la Calle Jaguey, antes Calle número 4 de la urbanización, en una distancia de 13.00 metros y con el solar número 38 de la urbanización, en una distancia de 4.36 metros; por el Este, con el solar número 36 de la urbanización, en una distancia de 27.96 metros; y por el Oeste, con la Avenida Escobar, antes Carretera Municipal que conduce a la Carretera PR 681, en una distancia total de 38.09 metros. En este solar se ha construido una casa de vivienda para una familia, de bloques y hormigón reforzado.
---Inscrita al folio 39 del tomo 284 de Barceloneta, finca número 15,135, Registro de la Propiedad de Puerto Rico, Sección de Manatí.

4. Sun West Mortgage Company es la sucesora en derecho y/o tenedora por valor recibido y de buena fe del pagaré antes descrito.

5. Surge de la declaración jurada suscrita por Andrés Concepción Lizardi, en su carácter de oficial autorizado de Sun West Mortgage, Inc., que la parte demandada ha incurrido en el incumplimiento de sus obligaciones, por lo que la parte demandante ha declarado vencida la totalidad del préstamo, la cual asciende a $158,132.53 al 31 de agosto de 2023, cantidad que continuará acumulándose a razón del 3.75% hasta el pago total de la obligación.

6. La parte demandada adeuda a la parte demandante, además, los cargos por demora equivalentes al 4% de todos aquellos pagos con atrasos en exceso de 15 días calendario de la fecha de vencimiento, la suma de $11,600.00 para costas, gastos y honorarios de abogado; la suma de $11,600.00 para cubrir cualquier otro adelanto que se haga en virtud de la Escritura de hipoteca y una suma equivalente a $11,600.00 para cubrir intereses adicionales a los garantizados por ley, según pactado.

No habiendo encontrado controversia alguna, este Tribunal acepta todas las determinaciones de hechos que propone el TPI como hechos materiales que no están en controversia. Seguidamente, discutiremos los errores señalados en el recurso apelativo.

En conformidad con lo anterior, atenderemos los errores argüidos por la señora Ayala Ocasio, a saber, erró el TPI: (1) al no desestimar el pleito por falta de buena fe de Sun West, (2) al no entrever el reclamo de que la apelada compareciera a la sesión de mediación sin su representación legal y (3) que la Ley Núm. 184-2012, al carecer de un reglamento vigente, expone a las partes a prácticas arbitrarias por parte de los mediadores.

En cambio, la apelada replicó que a la señora Ayala Ocasio no le asiste la razón en ninguno de sus argumentos en tanto que no ha cometido ninguno de los vicios que señala pudieran haber socavado el proceso de mediación. Más aún, la apelada sostiene que la apelante ha incurrido en varias acciones dilatorias, tergiversando el derecho en aras de retrasar la causa de acción.

Al entender sobre los documentos que componen el expediente de autos, no podemos sino resolver que el TPI actuó de conformidad con los parámetros de la gestión adjudicativa pertinente a la materia que atendemos. Por estar lógicamente relacionados los errores señalados por la apelante, pasamos a discutirlos en conjunto. Veamos.

En primer lugar, la señora Ayala Ocasio adujo en el recurso presentado ante este foro intermedio en su primer error señalado que, el apelado violó el Artículo 3 de la Ley Núm. 184-2012 al no cumplir con el requisito de la buena fe en el proceso de mediación en cuanto al ofrecimiento de alternativas disponibles. No obstante, luego de un exhaustivo análisis a los documentos evaluados, se desprende que Sun West en todo momento fue diligente y activo con

el caso de autos. Desde el momento en que la apelada presentó la *Demanda* hasta llegado el día de la vista de mediación en su fondo, el 15 de abril de 2024, Sun West fue consistente con su caso. Lo anterior quedó debidamente evidenciado mediante sus mociones, contestaciones en cumplimiento de órdenes del TPI, sus esfuerzos para que el proceso de mediación se llevara a cabo y, finalmente, su tenacidad para que el tribunal apelado aceptara la *Enmienda a Solicitud de Sentencia Sumaria.*

En cuanto al argumento de la señora Ayala Ocasio, de que la apelada no cumplió con el ofrecimiento de todas las alternativas disponibles, se desprende de los documentos y reiteramos que Sun West desde un principio cumplió con el proceso de mediación. Comenzando con que, antes de la apelada presentar la *Demanda* ante el incumplimiento de la señora Ayala Ocasio, se inició el proceso de Mitigación de Pérdidas. No obstante, el proceso no pudo concretarse efectivamente, ya que las solicitudes de mitigación de pérdidas que la apelante presentó estaban incompletas y no entregó los documentos adicionales requeridos. Así pues, terminando con la vista del 15 de abril de 2024, donde el CMC llevó a cabo el procedimiento de mediación en su fondo y las partes no llegaron a ningún acuerdo. Es menester destacar que, de la *Moción Informativa sobre el Resultado de Caso de Ejecución de Hipoteca Atendido Mediante Servicio de Videoconferencia*[95] no surge que Sun West no le ofreció todas las alternativas disponibles a la apelante. Por consiguiente, no es correcto el planteamiento de la señora Ayala Ocasio al argumentar que Sun West no cumplió con el requisito de la buena fe en el proceso de mediación en cuanto al ofrecimiento de las alternativas disponibles.

---

[95] Entrada #133 de SUMAC.

En segundo lugar, como pudimos apreciar en el tracto procesal, el caso de marras fue referido al CMC en varias ocasiones. Sin embargo, el proceso de mediación no pudo iniciarse, puesto que en ciertos señalamientos la señora Ayala Ocasio no compareció. Mientras que, en la ocasión que la apelante compareció, Sun West no lo hizo. De los documentos evaluados se desprende que, las veces que las partes no comparecieron fueron justificadas.

Ahora bien, cuando finalmente se llevó a cabo la vista de mediación el 15 de abril de 2024, la señora Ayala Ocasio compareció en compañía de su representación legal y Sun West compareció a través de su representante legal, Jessie González[96]. Por lo cual, el segundo error que arguye la apelante de que fue sin su representación legal, no se cometió. De la *Moción Informativa sobre el Resultado de Caso de Ejecución de Hipoteca Atendido Mediante Servicio de Videoconferencia*[97] surge que la apelada fue a través de su representante legal a la vista de mediación que se vio en su fondo y que, a raíz de dicha vista, se dio paso a que el TPI decidiera comenzar el proceso de ejecución de la hipoteca.

Aún si atendiéramos el segundo error señalado por la apelante, carece este de fundamentos para invalidar el dictamen del foro apelado. Esto, por la razón de que la jurisprudencia citada por la apelante, *Scotiabank v. Machargo Chardón*, 199 DPR 188 (2017), no sienta precedente en nuestro ordenamiento jurídico por ser una Sentencia y, sobre todo, no resuelve lo que alega resolver la apelante al confirmar el dictamen del Tribunal de Apelaciones. Es decir, confirma la decisión del foro intermedio, sin sentar precedente, de que cada parte puede asistir a la vista de mediación compulsoria

---

[96] *Íd.*
[97] *Íd.*

con o sin representación legal, indistintamente si la parte contraria se encuentra representada o no[98].

De igual manera, la señora Ayala Ocasio, en su escrito de *Apelación*, adujo que el TPI no tenía jurisdicción para disponer de la moción dispositiva, debido a que, presuntamente el proceso de mediación no había culminado. Como vemos, a la apelante no le asiste la razón, pues de los documentos evaluados quedó constatado que el proceso de mediación culminó aquel 15 de abril de 2024 cuando las partes no llegaron a ningún acuerdo. Por consiguiente, el TPI podía disponer de la *Enmienda a Solicitud de Sentencia Sumaria* de la apelada. Esto, puesto que el Tribunal Supremo ha expresado que un tribunal podrá continuar con el proceso judicial cuando:

> 1) el acreedor acudió a la vista de mediación pero el deudor no se presentó;
> **(2) las partes acudieron a la vista y se cumplieron con los requisitos de ley, pero no llegaron a un acuerdo, o**
> (3) el deudor incumplió con los acuerdos contraídos como resultado del proceso de mediación[99].

Por último, la señora Ayala Ocasio argumentó en el recurso ante nos en su tercer error señalado que, la Ley Núm. 184-2012, al carecer de un reglamento vigente, las partes están expuestas a prácticas arbitrarias por parte de los mediadores. Según lo discutido previamente, la Ley Núm. 184-2012 facultó a la OAT para que redactara y aprobara un reglamento o enmendara cualquier reglamento aplicable para establecer el proceso a seguir en su implementación[100]. En vista de lo anterior, el 11 de junio de 2014 la OAT adoptó la Circular Núm. 30 del año fiscal 2012–2013 donde dispuso que:

> [L]os métodos alternos para la solución de conflictos, incluyendo la mediación, se regulan en la Rama Judicial a través del Reglamento de Métodos Alternos para la Solución de Conflictos, administrado por el Negociado de Métodos Alternos para la Solución de Conflictos. **Examinando el**

---

[98] *Scotiabank v. Machargo Chardón*, 199 DPR 188, 189 (2017) (Sentencia).
[99] *Banco Santander v. Correa García, supra*, págs. 473-474 (énfasis suplido).
[100] 32 LPRA sec. 2886.

**Reglamento de Métodos Alternos para la Solución de Conflictos a la luz de lo establecido en la Ley 184-2012, concluimos que el mismo no requiere enmiendas para ajustarlo al estatuto. El proceso de mediación se regirá por la Ley Núm. 19 de 22 de septiembre de 1983, según enmendada y el Reglamento de Métodos Alternos para la Solución de Conflictos, según enmendado**. Esto incluye **lo relacionado a los aspectos procesales, términos, comunicación entre las partes, el (la) mediador(a), el tribunal y otros. Cualquier aspecto que deba ser objeto de aclaración, se atenderá oportunamente por medio de directrices emitidas y divulgadas por el Negociado de Métodos Alternos para la Solución de Conflictos**....[101]

Como vemos, el proceso de mediación está regulado por el Reglamento de Métodos Alternos para la Solución de Conflictos. Así pues, en la Circular Núm. 30 del año fiscal 2012–2013 se concluyó que no se requerían enmiendas para ajustarlo a la Ley Núm. 184-2012. Por su parte, la apelante adujo que, participar de un proceso de mediación sin un reglamento válido, era participar en un proceso en violación al debido proceso de ley. No le asiste la razón a la señora Ayala Ocasio. El señalamiento de la apelante no encuentra apoyo en la normativa adoptada por la OAT para el caso de marras. El Reglamento de Métodos Alternos para la Solución de Conflictos es el reglamento idóneo para el estatuto aquí en controversia, pues así lo dispuso la OAT. Colegimos que ninguno de los errores alegados fueron cometidos.

**IV.**

Por los fundamentos antes expresados, ***confirmamos*** la Sentencia emitida por el Tribunal de Primera Instancia.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[101] *Scotiabank v. SLG Machargo-Olivella*, *supra*, pág. 195 (énfasis suplido).